The State ex rel. Moreland and others vs. Whitford.

THE STATE ex rel. MORELAND and others vs. WHITFORD.

*December 17, 1881 — January 10, 1882.*

CERTIORARI: *(1) To quasi-judicial officer: what it brings up for review.* CONSTITUTIONAL LAW: STATE SUPERINTENDENT. *(2) His power to determine questions relating to division of school districts. (3) His power to make rules for hearing such cases.*

1. Where *certiorari* runs to an officer (in this case the superintendent of public instruction), who has only *quasi* judicial power to act in proceedings of a summary character, out of the course of the common law, the record will be reviewed to ascertain not only whether he acted within his jurisdiction, but whether he acted strictly *according to law;* but his decision upon the merits, or upon mere questions of fact as to which there was evidence to support it, will not be reviewed.

2. The statutes imposing upon the state superintendent the duty of determining questions of the division of school districts, on appeal from the decisions of town boards, is valid, the power conferred being only *quasi* judicial. [But to what extent the jurisdiction would be upheld in questions involving grave property and personal rights, it was not necessary to decide in this case.]

3. The superintendent has power to make all needful rules and regulations for the hearing of such cases by him, including a rule requiring the evidence to be submitted in the form of affidavits, and the arguments of parties or their counsel in writing, without a personal hearing or oral examination of witnesses before him.

CERTIORARI to the state superintendent, to bring up for review his proceedings upon an appeal from the decision of a town board in relation to the division of a school district. The case is sufficiently stated in the opinion.

*B. Dunwiddie* and *B. F. Dunwiddie*, for the plaintiffs in error, argued, among other things, that the superintendent, in denying to the parties a personal hearing on the appeal, exceeded his jurisdiction. R. S., sec. 497. The law says he shall hear the appeal, and, in order to do so, he must hear the parties and the subject matter. Not having done so, his order reversing the order of the town board is void. *Joint School District No. 7 v. Wolfe*, 12 Wis., 685. 2. The forming and altering of school districts are not properly part of the supervision of public instruction, but are matters of law. In deciding appeals upon such subjects, the superintendent must construe, interpret and apply the law, and determine questions involving personal rights. The powers thus exercised are judicial in their character, and the statute conferring them is in violation of the state constitution, by which all judicial power is vested in certain courts. Const. of Wis., art. VII, sec. 2; *Attorney General v. McDonald*, 3 Wis., 805; *Gough v. Dorsey*, 27 id., 131; *Van Slyke v. Trempealeau County Far. Mut. F. Ins. Co.*, 39 id., 390; *Wayman v. Southard*, 10 Wheat., 46; Cooley's Con. Lim., 91; *Merrill v. Sherburne*, 1 N. H., 204; Freeman on Judgments, 446; *People v. Supervisors*, 10 Cal., 344; 2 Wheat., 309; 13 Md., 91; 35 Me., 15; 46 id., 91; 2 Mich., 411; 18 Ind., 479; *Anderson v. Morris*, 12 Wis., 689. 3. That portion of sec. 497, R. S., which gives to the superintendent power to prescribe the manner of taking and hearing appeals, is in effect a delegation of legislative power, and is therefore void. Cooley's Con. Lim., 116; *Slinger v. Henneman*, 38 Wis., 505; *State v. O'Neill*, 24 id., 149; *C., W. & Z. Railroad Co. v. Comm'rs of Clinton Co.*, 1 Ohio St., 88. 4. Counsel also criticized the order of the state superintendent upon the merits.

*P. J. Clawson*, for defendant in error:

1. The writ properly brings up only the proceedings showing jurisdiction, and the decision of the superintendent; and such decision can be reversed only on the ground of errors and irregularities appearing on the face of the record. The merits will not be reviewed. *State v. Goodwin*, 24 Wis., 286; *People v. Mayor*, 2 Hill, 9; *Roberts v. Warren*, 3 Wis., 736; *Frederick v. Clark*, 5 id., 191. 2. The return of the superintendent shows that the appeal and the proceedings had thereon were in perfect accord with the requirements of the statute and the rules prescribed by the superintendent respecting appeals, and were all regular and in due form of law. R. S., secs. 412, 418–9, 497; Laws of Wis. relating to Common Schools, 1880. The decision, therefore, is final. 3. The act of the legislature giving the superintendent power to prescribe rules in respect to appeals is not a delegation of legislative power. *In re Griner*, 16 Wis., 423; *In re Oliver*, 17 id., 681; *Spaulding v. Elwood*, 11 id., 17; *Druecker v. Salomon*, 21 id., 628. 4. The law authorizing the superintendent to hear and determine these appeals is not in conflict with the constitution. This power is only *quasi* judicial. *Joint School District No. 7 v. Wolfe*, 12 Wis., 687; *Clapp v. Preston*, 15 Wis., 543; *Lathrop v. Snyder*, 17 id., 110.

ORTON, J. This is a common-law *certiorari* to bring before this court the record and proceedings of the defendant in error, as state superintendent having the supervision of public instruction, in deciding upon the question of the division of school district No. 8 of the town of Clarno, in Green county, upon an appeal from the order of the town board of said town making such division. The question first to be disposed of is, the true province of the writ addressed to such a *quasi* judicial tribunal. In ordinary cases, where the writ goes to inferior courts or tribunals, the record only can be inspected to ascertain whether such court acted within its juris-

diction; but in respect to an officer having only *quasi* judicial power to act in proceedings of a summary character and out of the course of the common law, the proceedings will be reviewed to also ascertain whether such person, having jurisdiction, has kept within it and acted strictly according to law. To this end, errors or irregularities may be corrected. This we understand to be the effect of the decision of this court in *Milwaukee Iron Co. v. Schubel, Town Clerk, etc.,* 29 Wis., 444.

But the office of this writ, although so enlarged in such cases, will yet not warrant a review of mere questions of fact where there is any contention as to the proof, or the reversal of the judgment or determination of the officer upon the *merits* of the case. Errors of law, and not errors of judgment merely, will be corrected in such a case. In accordance with this view of our jurisdiction in the present case, we may look into the record to ascertain, (1) whether the defendant acted in this matter on appeal within his jurisdiction as state superintendent; (2) whether he acted according to law; and (3) whether he made his determination of the facts upon any evidence which would warrant it. The constitutional question as to whether such a jurisdiction could be constitutionally conferred upon this officer, is virtually disposed of by the above ruling that he is authorized to act only in a *quasi* judicial capacity. If, as the learned counsel of the plaintiff in error contends, he is made by the law a judicial tribunal or inferior court in the ordinary sense, then his jurisdiction only can be inquired into; but it is decided that his functions are only *quasi* judicial, and that is sufficient. *Joint School Dist. No. 7, etc., v. Wolfe,* 12 Wis., 685. In that case, although the question was not directly raised as to the authority of the state superintendent, but only as to a clerk in his office acting in a similar matter, yet it was so vital to the proceeding it must be construed as passed without question, *sub silentio.* The question is directly met and decided as to the superintendent

of public instruction of the state of New York, whose powers and duties on such appeals are substantially as in this state, and whose determination is final. *People v. Collins*, 34 How., 336. But it is sufficient that the state superintendent, on appeal from the decision of the town board altering or changing the boundaries of a school district, passes upon the matter as an original question, and has the same power and discretion in deciding whether such district should be changed, altered or divided, as the town board had in making its decision. If the state superintendent in this has judicial power conferred upon him in violation of the constitution, so has the town board; and yet no one has thought of questioning the constitutional power of such a body in such a proceeding. The state superintendent is not a court of appeals or of errors, to sit in review of the errors of the town board; but on appeal he acts in the whole matter as the board should have acted, and his decision is final. The legislature might have made the decision of the town board final, if it had seen fit so to do; but it provided for a hearing of the same matter before another officer on appeal, and has made that final.

We think it was eminently proper for the legislature to confer this power of final disposition of changes in school districts on this officer. It is especially within the appropriate functions of his office, and, considering the eminent ability and impartiality of the incumbent of this office in the past, as at the present time, experience has proved that such matters may well be left with him as a finality. To what extent his jurisdiction might be upheld, under the constitution, on questions involving grave property and personal rights, is an important question, which we do not now decide; for in this matter, where his decision maintains the district intact, and its affairs *in statu quo*, no mischief of this sort has been done. But we are satisfied that this supervision of the state superintendent over the affairs of schools and school districts, commonly very fruitful sources of litigation, has been most wisely conferred

upon him for the public interest, as well as for the peace and prosperity of the schools and districts themselves; and there could be no better vindication of this policy of the state, and no higher commendation of the distinguished gentlemen who have filled the office, than the fact that the decisions of this officer have been so generally and almost uniformly acquiesced in, and the correlative fact that so few cases, placed by the law within his widely-extended jurisdiction, have found their way into the courts. .

In respect to the power of the superintendent to make all needful rules and regulations for the hearing of such cases on appeal, we do not understand that it is denied, but only his power to make any rule or regulation by which a *personal* hearing before him of the aggrieved party is denied, and by which the testimony cannot be taken orally as in open court at the time of the hearing. If he cannot exercise the power to make a rule requiring the evidence to be submitted in the form of affidavits, and the arguments of the parties or of their counsel in writing, then it is quite obvious, from the vast number of such and similar cases, his jurisdiction may as well be taken away entirely; for it would be impossible for him to hear personally such matters and appeals within the time fixed by law, if ever during his term of office. We think it was not only clearly within his power to do so, but that the rules for the hearing of such appeals are most judicious and salutary. The law (section 497, R. S.) expressly authorizes him to prescribe the manner of both the taking and hearing of the appeal. The duty of forming and altering school districts is purely municipal, administrative and ministerial, although involving the exercise of judgment and discretion, and has no respect whatever to personal or property rights. This power and discretion are only limited by the districts being required to be of contiguous territory, and not to embrace more than thirty-six square miles of land. Sections 412–418, R. S.

The statute prescribes no rules according to which this duty

shall be performed, and no method by which any testimony relating to the question may be taken, or way in which the board may become informed as to the advisability or policy of the proposed formation or alteration of its boundaries. The state superintendent, on an appeal from the decision of the board altering a school district, in effect performs the same duty as the town board in respect to it, and exercises the same judgment and discretion; and if the law were silent as to any rules or regulations as to the manner of hearing and deciding upon the advisability or policy of the alteration, he would then be left to any proper manner of informing himself of the facts, and of hearing the parties aggrieved, the same as the town board in the first place. But the legislature, no doubt considering that the superintendent would not have the same facilities for personally obtaining a knowledge of the facts, provided that he might prescribe the manner of hearing as well as of taking the appeal. In this case it seems that he acted in strict accordance with rules adopted and duly published under this authority. It is too apparent to require further discussion that, in the manner of such hearing and of taking the testimony, no personal, common-law or constitutional right has been infringed, any more or in any respect different than in the division of this district by the town board in the first place without any rules. Municipal corporations are necessarily left to prescribe their own rules for doing many things required of them, and they have the inherent right to prescribe such rules as may facilitate the performance of their duties. Cooley on Const. Lim., § 195.

The state superintendent appears to have acted in strict compliance with law and the rules of his department, and there does not appear to have been any constitutional provision violated, either in giving him such a jurisdiction or in his manner of hearing the appeal. It may be well to say here that the use of the word "jurisdiction" in this matter is not strictly proper. It is a *duty* imposed upon the town board,

and then, on appeal, on the state superintendent, to alter
school districts; and the substantial effect of the whole matter
is, that town boards may alter school districts only with the
approval of the state superintendent, if any party aggrieved
appeal to him.   Instead of calling it strictly the *hearing of
the appeal*, it is his determination of the advisability, propri-
ety or policy of the alteration, on an appeal to him from the
decision of the board.   When we regard the real nature of
the duty to be performed, and are not carried away by words
and names of technical meaning, the authorities cited will at
once appear inapplicable.   "Powers judicial, judiciary powers,
and judicatures, are used to designate with clearness that de-
partment of government which it was intended should inter-
pret and administer the laws."  Cooley on Const. Lim., 92.
Jurisdiction, in the meaning of the law, strictly " is the au-
thority or power which a man hath to do justice in causes of
complaint brought before him."  Jac. Law Dic., tit. "Juris-
diction."   "*Judicium* is a proceeding before a 'judex' or
judge.   Jurisdiction is the power of hearing and determining
causes and of doing justice in matters of complaint."   Burr.
Law Dic.

   Under the rule laid down in *Milwaukee Iron Co. v. Schu-
bel, supra*, we may not look into the evidence any further than
to see that there was evidence which warranted the action of
the superintendent; but it may be proper to say that this
school district, before its alteration, was of compact and square
form, of four sections of land, with the school-house in the
center, and very nearly central, and conveniently accessible, to
the mass of the inhabitants.   It would be difficult to find a
district better situated geographically, and affording greater
advantages and facilities for the attendance of the children at
the school.   It would seem that the main reasons for the alter-
ation were personal, and that religion and nationality had
much to do with it.  Such causes of local disturbance ought not
to be encouraged by the alteration of civil and geographical

boundaries suitable to their continued existence, but they should rather be suppressed by fostering a more liberal and generous public sentiment. If school children are found to have feelings of religious or national animosity to the disturbance of the school, they should be kept together, under the same judicious training and instruction, until such feelings are eradicated, before they arrive at mature age and capable of still greater injury to society; and parents may well assist the teacher in efforts so salutary and beneficent, rather than cherish the growth of such roots of bitterness and bigotry. Questions of religion, politics or nativity should not be considered in the formation and alteration of school districts, any more than of towns or counties or congressional districts. "Gerrymander" is the unsavory but expressive name for this method of creating civil divisions of the state for improper reasons. We are inclined to adopt the view of the superintendent that "the principal questions to be considered are material, geographical, statistical and financial," in altering the boundaries of school districts.

The position taken by the learned counsel of the plaintiff in error, that the decision and determination refusing to alter this district, which is brought into this court with the record, is not the decision of the state superintendent, but only of a clerk in his office, is disposed of by the record itself. The return of that officer shows that it was his personal and official action, and the decision is subscribed by him in due form.

*By the Court.*— The decision of the state superintendent herein is affirmed.